IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | No. 3:20-cr-329-E |
| | § | |
| KHIRY YOUMAN, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

By an electronic order dated March 23, 2021, United States District Judge Ada Brown referred this matter to the undersigned United States magistrate judge to conduct a hearing on the alleged violations contained in the Petition for Person Under Supervision filed with the Court on March 1, 2021 [Dkt. No. 10] and to make findings and a recommendation for modification, revocation, or termination of the defendant's term of supervised release, including a recommended disposition under 18 U.S.C. § 3583(e). *See* Dkt. No. 19.

Defendant Khiry Youman personally appeared in person and through counsel for a final revocation hearing over VTC (over Zoom) on April 26, 2021.

After consideration of the filings, evidence, testimony, oral argument, and applicable law, the undersigned recommends that Defendant's terms of supervised release should be revoked as explained below.

## Background

Defendant Khiry Youman was sentenced in the United States District Court of the Eastern District of Texas to a sentence of 33 months in custody, followed by a 5-year supervised release term, for the offense of Bank Fraud, in violation of 18 U.S.C. § 1344.

Defendant began his term of supervised release on February 28, 2020, and jurisdiction was transferred to the Northern District of Texas on July 15, 2020. *See* Dkt. Nos. 1 & 2.

The Court previously considered Defendant's violations of his conditions of supervised release, specifically testing positive for illegal drugs more than three times in one year – and, on October 6, 2020, Judge Brown granted Defendant an exception and allowed him to continue his term of supervised release. *See* Dkt. Nos. 6 & 9.

### A. <u>Alleged Violations</u>

On March 1, 2021, the supervising United States Probation Officer (USPO) submitted a petition for offender under supervision (Petition) alleging the following five violations:

### I.

### <u>Violation of Mandatory Condition</u>

> The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

### <u>Violation of Standard Condition No. 7</u>

The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except prescribed by a physician.

### Nature of Noncompliance

Khiry Youman violated these conditions of supervised release by using cocaine, an illegal controlled substance in or about May 2020. On May 19, 2020, Mr. Youman submitted a urine specimen at PhoenixAssociates Counseling (PACS) a contract vendor in Garland, Texas that tested positive for cocaine. On June 3, 2020, Mr. Youman's urine specimen was confirmed positive.

Mr. Youman violated these conditions of supervised release by using cocaine, an illegal controlled substance in or about May 2020. On May 29, 2020, Mr. Youman submitted a urine specimen at PACS that tested positive for cocaine. On June 19, 2020, Mr. Youman's urine specimen was confirmed positive.

Mr. Youman violated these conditions of supervised release by using cocaine, an illegal controlled substance in or about June 2020. On June 27, 2020, Mr. Youman submitted a urine specimen at PACS that tested positive for cocaine. On July 11, 2020, Mr. Youman's urine specimen was confirmed positive.

Mr. Youman violated these conditions of supervised release by using cocaine, an illegal controlled substance in or about August 2020. On August 3, 2020, Mr. Youman submitted a urine specimen at PACS that tested positive for cocaine. On August 11, 2020, Mr. Youman's urine specimen was confirmed positive.

## II.

### Violation of Special Condition

The defendant shall participate in a program of testing and treatment for drug abuse, under the guidance and direction of the U.S. Probation Office, until such time as the defendant is released from the program by the probation officer.

### Nature of Noncompliance

Mr. Youman violated this condition of supervised release by failing to attend drug treatment at PACS on May 12, 2020, July 7, 2020, August 10,

2020, and August 19, 2020. Mr. Youman further violated this condition of supervised release by failing to attend drug treatment at Homeward Bound Incorporated (HBI) a contact vendor in Dallas, Texas on February 4, 2021.

Mr. Youman violated these conditions of supervised release by failing to submit a urine specimen at PACS on July 7, 2020, July 30, 2020 and August 5, 2020. He further violated this condition by failing to submit a urine specimen at HBI on January 22, 2021, February 4, 2021 and February 22, 2021.

### III.

**Violation of Standard Condition No. 6**

The defendant shall notify the probation officer at least ten days prior to any change in residence or employment.

**Nature of Noncompliance**

Mr. Youman violated this condition of supervised release by failing to inform U.S. Probation in his change of residence. Mr. Youman moved from his aunt's residence (listed with U.S. Probation) on approximately September 22, 2020, to a new residence in Dallas, Texas without notifying U.S. Probation. U.S. Probation became aware of Mr. Youman's new residence on October 19, 2020.

### IV.

**Violation of Standard Condition No. 3**

The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

**Nature of Noncompliance**

Mr. Youman violated this condition of supervised release by providing false information to U.S. Probation, regarding his COVID-19 status. On February 5, 2021, Mr. Youman advised U.S. Probation Officer Larry Gibbs (USPO Gibbs) he could not attend drug testing because he was positive for COVID-19. Mr. Youman was instructed to submit his test results. Mr. Youman submitted a letter from FrontLine ER in Dallas, Texas, advising he tested positive for COVID-19 on January 27, 2021. USPO Gibbs contacted staff from FrontLine ER on February 18, 2021 and was advised there was no record of Mr. Youman being tested for COVID-19 on January 27, 2021 or at any other

time. Additionally, the letter Mr. Youman provided to USPO Gibbs was confirmed fraudulent by FrontLine ER.

V.

**Violation of Criminal Monetary Penalties**

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| Totals | Special Assessment | Fine | Restitution |
|---|---|---|---|
| | $100 | 0 | $11,081.89 |

Payment to begin immediately. Any amount that remains unpaid when the defendant's supervision commences is to be paid on a monthly basis of a rate of at least 10% of the defendant's gross income, to be changed during supervision, if needed, based on the defendant's changed circumstances, pursuant to 18 U.S.C. Section 3664(k). Additionally, 100% of receipts from gifts, tax returns, inheritances, bonuses, lawsuit awards, and any other receipts of money (to include, but not limited to, gambling proceeds, lottery winnings, and found money) must be paid toward the unpaid fine balance within 15 days of receipt.

**Nature of Noncompliance**

Mr. Youman violated this condition of supervised release by failing to make restitution payments from the months of March to July 2020, and from September 2020 to February 2021. On August 13, 2020, Mr. Youman made a restitution payment in the amount of $2,092.75. The current restitution balance is $8,989.14.

**Personal History**

Mr. Youman's term of supervised release began on February 28, 2020, in the Northern District of Texas, Dallas Division. Upon release from the Bureau of Prisons (BOP), Mr. Youman resided with his maternal aunt in the city of Dallas. Mr. Youman did not receive residential reentry placement due to numerous infractions he received while housed in the BOP. Mr. Youman worked for Jeld-Wen a window manufacturing company in Dallas, Texas for approximately two months from June to August 2020.

On March 5, 2020, Mr. Youman was placed in drug treatment at PACS. His treatment consisted of weekly group counseling, monthly individual counseling and random drug testing. Mr. Youman struggled to maintain

sobriety and as a result, his drug treatment was intensified. He was placed in PACS Intensive Outpatient Program (IOP) which consisted of 3-hour group sessions, 3 times per week, monthly individuals, and random drug testing.

On August 18, 2020, Mr. Youman was placed in a 30-day residential treatment program at Salvation Army, a contract vendor in Dallas, Texas. According to the Salvation Army's staff, Mr. Youman was compliant with treatment recommendations and successfully completed the program on September 17, 2020. On September 30, 2020, Mr. Youman was placed back into supportive outpatient treatment at PACS; his treatment consisted of weekly groups, monthly individuals, and random drug testing.

On October 6, 2020, Mr. Youman had a hearing before Your Honor in reference to his testing positive for illegal drugs more than three times in one year. Mr. Youman was granted an exception and allowed to continue his term of supervised release. Your Honor reprimanded Mr. Youman about his drug use and instructed him to attend drug treatment and testing as directed.

Subsequent to Mr. Youman's court hearing, U.S. Probation had difficultly contacting him because he did not have his own mobile phone. Mr. Youman reported he could be reached at his girlfriend's mobile phone and/or his girlfriend's sister's mobile phone. USPO Gibbs attempted to contact Mr. Youman on the listed mobile numbers he provided on October 19, 2020, and October 21, 2020, but received no response. On November 6, 2020, USPO Gibbs learned, Mr. Youman no longer resided with his maternal aunt. USPO Gibbs contacted Mr. Youman on November 9, 2020, and he advised he was residing with his girlfriend in the Oak Cliff section of Dallas. He advised he moved-in with his girlfriend approximately October 16, 2020.

On November 11, 2020, Mr. Youman was referred to HBI because it was near his new residence. On November 17, 2020, Mr. Youman reported he contracted COVID-19 and he was not able to begin drug treatment. On December 8, 2020, Mr. Youman was tested for COVID-19, and the results were positive. Mr. Youman forwarded the positive COVID-19 to USPO Gibbs.

On January 22, 2021, Mr. Youman was tested for COVID-19 and the results were negative. On January 28, 2021, Mr. Youman began IOP and random drug testing at HBI. On February 4, 2021, Mr. [Youman] missed a random drug test at HBI. USPO Gibbs contacted Mr. Youman on February 5, 2021 in reference to his missed drug test. Mr. Youman reported he tested positive for COVID-19 again; he was instructed to forward his positive results to USPO Gibbs.

>      On February 18, 2021, USPO Gibbs observed the positive COVID-19 results from Mr. Youman. According to the document, Mr. Youman tested positive for COVID-19 at FrontLine ER on January 27, 2021. The positive COVID-19 results forwarded by Mr. Youman in February 2021, were different in appearance from the two previous results forwarded and appeared to be fraudulent. USPO Gibbs contacted FrontLine ER and was informed there were no records of Mr. Youman being tested for COVID-19 at any time, specifically on January 27, 2021. The staff further advised there were no other FrontLine ER clinics in Dallas, Texas. FrontLine ER staff forwarded an example of a positive COVID-19 test and confirmed the document Mr. Youman forwarded to USPO Gibbs was fraudulent.
>
>      Mr. Youman has tested positive for illegal drugs, failed to attend drug testing/treatment as directed and was untruthful in reference to his COVID-19 results. The Court granted Mr. Youman an opportunity to continue supervised release subsequent to submitting more than three positive drug tests in one year. Currently, it appears Mr. Youman lacks the motivation required to successfully complete his term of supervised release.

Dkt. No. 10 at 1-5.

On March 1, 2021, the Court issued a warrant for Defendant. *See id.* at 6; Dkt. No. 11 Dkt. No. 5. He made his initial appearance on March 22, 2021 and was ordered detained pending a final revocation hearing. *See* Dkt. No. 13 & 16.

**B.    Revocation Hearing**

Defendant appeared with counsel for a final VTC revocation hearing on April 26, 2021. After his consents and competence were established, Defendant testified under oath that he understood the violations alleged in the Petition and the range of punishment for those violations and that he understood that revocation was mandatory based on his alleged refusal to comply with drug testing.. He understood that he had the right to plead not true and have a hearing concerning whether he committed those violations. Defendant knowingly and voluntarily consented to enter his plea to the violations alleged in the Petition before a United States Magistrate

Judge. *See* Dkt. No. 24. He agreed to – and did – plead true to the alleged violations numbered I, II, III, IV, and V in the Petition.

And Defendant's counsel and the government's counsel each made statements as to the appropriate punishment on revocation for these violations. Defendant was given an opportunity to speak on his own behalf but declined to do so.

Defendant's counsel requested a sentence of 5 months, at the bottom of the policy statement range, with no additional term of supervised release and with a recommendation to the Bureau of Prisons that Defendant be placed locally.

The government's counsel urged that Defendant be revoked and sentenced within the recommended 5-11 month range and agreed that 5 months is appropriate but argued that an additional term of supervised release is appropriate where Defendant has outstanding restitution obligations.

At the conclusion of the hearing, the undersigned orally recommended that the pleas of true to the alleged violations numbered I, II, III, IV, and V in the Petition. be accepted by Judge Brown, that Judge Brown find that Defendant violated his supervised release conditions as alleged, that Defendant's terms of supervised release be revoked, and that he be sentenced to an additional term of imprisonment of 5 months with no additional term of supervised release.

## Analysis

Section 3583(e)(3) of Title 18 provides that after considering the factors set out in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), a court may

>revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case[.]

18 U.S.C. § 3583(e)(3). The relevant factors in § 3553(a) to be considered are:

>(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>(2) the need for the sentence imposed--
>\*\*\*
>>(B) to afford adequate deterrence to criminal conduct;
>>(C) to protect the public from further crimes of the defendant; and
>>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>\*\*\*
>(4) the kinds of sentence and the sentencing range established for--
>>(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>>>(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>>
>>(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>
>(5) any pertinent policy statement--

> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §§ 3553(a), 3583(e)(3).

The United States Court of Appeals for the Fifth Circuit has held that courts may not consider the factors listed in § 3553(a)(2)(A), which include "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," when revoking a term of supervised release. *United States v. Miller*, 634 F.3d 841 (5th Cir. 2011). Nor may courts impose or lengthen a prison term in order to foster a defendant's rehabilitation. *See United States v. Tapia*, 131 S. Ct. 2382 (2011).

Revocation of a term of supervised release is mandatory if the defendant possesses a controlled substance, possesses a firearm, refuses to comply with drug testing, or tests positive for illegal controlled substances more than three times over the course of one year. *See* 18 U.S.C. § 3583(g). But 18 U.S.C. § 3583(d) also provides that "[t]he court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action

against a defendant who fails a drug test." 18 U.S.C. § 3583(d); *see also United States v. Brooker*, 858 F.3d 983 (5th Cir. 2017) (noting the issue of whether the Section 3853(d) exception applies where the established violations of a defendant's conditions of supervised release include more than failing a drug test).

Based on Defendant's knowing and voluntary plea of true to the alleged violations numbered I, II, III, IV, and V in the Petition, Defendant has violated his conditions of supervised release, and revocation of his supervised release is mandatory. Even if Section 3583(d) requires the Court to consider the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, as a possible exception to mandatory revocation where Defendant's violation include failed drug tests, the Court should not, in its discretion, apply this exception where Defendant has failed to take advantage of the opportunities he has been afforded and has missed drug counseling and testing even after successfully completing the Salvation Army in-patient drug treatment program. Because Defendant has been unable or unwilling to follow his conditions of supervised release, after considering the relevant factors identified in § 3583(e) that are set forth in § 3553(a), a term of incarceration is warranted to appropriately address his violations.

As set out in the Petition, the statutory maximum term of incarceration upon revocation of Defendant's supervised release is 3 years. *See* Dkt. No. 10 at 5 (citing 18 U.S.C. § 3583(e)(3)). Based upon a violation grade of C and a criminal history category of III, the resulting range of imprisonment under United States Sentencing

Guideline (USSG) § 7B1.4(a) is 5-11 months. *See id.* Defendant may also be placed back on supervised release following any term of imprisonment imposed upon revocation, but the maximum term of supervised release must not exceed the term of supervised release authorized by state for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation. *See id.* (citing 18 U.S.C. § 3583(h); *U.S v. Jackson*, 559 F.3d 368 (5th Cir. 2009)). Defendant is subject to a maximum term of supervised release of up to 5 years, minus any revocation sentence. *See id.*

Here, a sentence of 5 months with no additional term of supervised release would accomplish the relevant sentencing objectives, as identified in 18 U.S.C. § 3583(e)(3) and set forth in 18 U.S.C. § 3553(a). Defendant has repeatedly violated his conditions of supervised release despite numerous opportunities to obtain compliance, and this recommended revocation sentence is intended to protect the public and assist Defendant with learning from and avoiding further problematic and criminal behavior in the future. But Defendant would not benefit from an additional term of supervised release, which the undersigned finds would not be necessary or appropriate, particularly in light of Defendant's successful completion of in-patient drug treatment.

## Recommendation

Defendant Khiry Youman terms of supervised release should be revoked, and he should be committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 5 months with no additional term of supervised release.

Defendant Khiry Youman should receive credit for time served, and the Court should recommend to the Bureau of Prisons that Defendant be placed in FCI Seagoville or, alternatively, locally within the Northern District of Texas.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 26, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE